## ST. LOUIS & S. F. R. CO. v. BURROUS.

No. 899. Opinion Filed September 12, 1911.

(118 Pac. 143.)

1. ACTION—Grounds—Injury Without Wrong. A railway company operating within the scope of its power, has the right to the use of its property and the lawful enjoyment thereof, and if, in the enjoyment of this right a loss occurs to another, it is a wrong for which there is no liability.

2. WATERS AND WATER COURSES—Natural Water Course— Liability for Pollution. A railway corporation which erects a

roundhouse upon its own land, and in connection therewith constructs facilities for bathing its employees and washing its engines, is not liable in damages to persons residing along a natural water course for injuries arising from a stagnant pool upon said water course, formed by the water used by said corporation, and other water naturally flowing into said course gathering in a depression on the land of a third person about four blocks from the place the water from the roundhouse empties into the water course, if said railway corporation was free from negligence or malice, and used due care in the erection and use of such facilities.

(Syllabus by the Court.)

*Error from District Court, Choctaw County; Malcolm E. Rosser, Judge.*

Action by W. H. Burrous against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

*W. F. Evans, R. A. Kleinschmidt, W. C. Mitchell,* and *E. H. Foster,* for plaintiff in error.

*White & Hardison,* for defendant in error.

KANE, J. This was an action, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, to recover damages for injury to his real estate, situated one block east, and four blocks south, of the defendant's roundhouse, in the city of Hugo. On a trial to a jury there was a verdict for the plaintiff, on which judgment was duly entered, to reverse which this proceeding in error was commenced.

The evidence disclosed that some time during the year 1903 the defendant erected a roundhouse at the town of Hugo, for the purpose of storing, repairing, and cleaning its engines; this being a necessary incident to the business carried on by the corporation. In washing the engines they were placed over pits constructed in the roundhouse for that purpose, and water was pumped into the boilers, and from thence escaped into the pits. From the pits the water was drained off through a long tile pipe, running south from the roundhouse; there being no sewers in the city. The tile pipe emptied into a natural drain or channel sev-

eral feet south of the roundhouse, and the water followed this natural drain or channel in a southeasterly course until it entered the premises of one Riggs, four blocks south and one block east of defendant's roundhouse, at which point there was a depression on the Riggs lot which caused the water to spread out, forming a shallow pool, varying in size from time to time. Beyond the pool the channel continued, and the water in ordinary times formed a continuous stream, emptying into Horse creek, about 500 or 600 yards southeast of the pool. In addition to the water that came from the pits, there was another stream from the roundhouse, used by the employees of the defendant for washing their faces and hands, and occasionally for bathing purposes. The bathroom water was let out on the surface of the ground, and finally found its way to the natural channel into which the tile pipe from the engine pits emptied, and the two streams united a short distance southeast of the roundhouse, and both, together with the water naturally flowing into the water course, flowed into the pool on the Riggs lot. The stream and the pool swelled or receded, dependent upon the amount of rainfall. At times the stream and the pool would be dry, but owing to the low condition of the ground south of the roundhouse, and especially the low place on the Riggs lot, there was usually a little stream of water extending from the roundhouse to the pool. There seems to be no claim that the cleaning apparatus and the bath were improperly or unskillfully constructed, nor is there any evidence tending to prove that the railway company was negligent or malicious in their use. The evidence shows that the water was pumped into the boilers with a force pump from a clear pond or tank; that the mud and fine scales that accumulated in the boilers were screened off and kept in the pits, and, after the engines were washed, the pits were cleaned, and the scales and mud wheeled outside the roundhouse, so that none of it emptied into the water course; that the water that came out of the tile pipe was clear, and had no unpleasant odor. The evidence as to the character of the water after it left the tile pipe until it reached the pool was conflicting; the plaintiff and

several other witnesses testifying that the water was offensive, and smelled bad, while other witnesses testified that the water was clear, and they detected no odor. Under our view of the case, however, that proposition never became material.

It is a well-settled principle of law that a man, or a corporation within the scope of its authority, has the right to the use of his property and to the lawful enjoyment thereof, and that, if in the enjoyment of this right a loss occurs to his neighbor, it is a wrong for which there is no liability.

The defendant was engaged in a lawful business, for which it made large expenditures, and, under the rule just stated, it was at liberty to carry on that business in the ordinary way, and was not, while so doing, accountable for consequences which were the natural result of such use. All that can be required is that the property shall be used with due care, so as to give as little annoyance as may be reasonably expected from the nature of the use. It would be unjust to hold a property owner answerable in damages for the reasonable exercise of a right where it is accompanied by a cautious regard for the rights of others, and there is no just ground for the charge of malice, negligence, or unskillfulness. In the case at bar, there is no evidence tending to show that the defendant was malicious, negligent, or unskillful in the erection, maintenance, or use of that part of its property used for the purpose complained of, and that was the gist of the plaintiff's case. As far as appears from the evidence, the water used for bathing its men and cleaning its engines was conveyed from a tank or pond of clear water in the most approved and scientific manner, as far as sanitation is concerned, and discharged after its use, free from impurities, through properly constructed channels into a natural water course, which, as far as the evidence discloses, was the most practicable means of disposing of it. Under that state of the evidence, the plaintiff was not entitled to recover.

The case of *Barnard et al. v. Sherley,* 135 Ind. 547, 34 N. E. 600, 35 N. E. 117, 24 L. R. A. 568, 41 Am. St. Rep. 454, is in point in principle. The question in that case was whether one

who sinks an artesian well upon his land and uses the water to bathe the patients in a sanitarium erected by him on said premises is liable to injunction and damages for allowing the water to flow into a stream which is the natural water course of the basin in which the well is situated, and which is the only practicable outlet for the water, if the owner is free from negligence or malice and uses due care in avoiding injury to his neighbors. The court held that:

"Where one sinks an artesian well upon his own land, and uses the water to bathe the patients in a sanitarium or hospital erected by him on said premises, he is not liable to injunction and damages for allowing the water to flow into a stream which is the natural water course of the basin in which the artesian well is situated; the owner being free from negligence or malice and using all due care in avoiding injury to his neighbor."

The principal case is quite exhaustive, and cites a great many cases bearing upon the question involved in the instant case, all of which seem to sustain the conclusion herein reached.

The main question is, Did the railway company exercise due care in the construction, management, and use of its own property? If the facilities used by the railway company for bathing its men, and cleaning its engines, were constructed and maintained with due care and the water discharged after its use in a careful and proper manner into a natural water course, which seems to be the most practicable place for it, the company has discharged its duty to the plaintiff, and is not liable for any consequences that may have arisen from the water thus discharged gathering filth on its way between the place it was discharged from the drain pipe to the pool on the Riggs lot. Ordinarily a case of this kind ought to be reversed and rendered, but, as there seems to have been some confusion as to the exact questions involved, we will reverse and remand it, that it may be submitted upon the right theory, if there is any evidence adduced at the trial to justify it.

The cause is therefore reversed and remanded, with directions to grant a new trial.

All the Justices concur.